## In re NARRAGANSETT CLOTHING COMPANY, Debtor.

### Bankruptcy No. 90–10149.

United States Bankruptcy Court, D. Rhode Island.

March 16, 1992.

---

See also 119 B.R. 388, 122 B.R. 855.

Whitton E. Norris III, Thomas Walsh, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., for Joseph B. Garb, Trustee.

Robert S. Parker, Temkin & Miller, Ltd., Providence, R.I., for Fixture Distributing, Inc.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on December 11, 1991 on the Chapter 11 Trustee's Objection to the claim of Fixture Distributing, Inc., in the amount of $107,171.56. At issue in determining whether the claimant is entitled to allow-ance of its claim are the Debtor's alleged breach of contract, and the creditor's alleged failure to mitigate damages.

## FINDINGS OF FACT

1. The Narragansett Clothing Co. had operated a chain of retail stores selling traditionally styled, high quality, women's clothing. The stores were located primarily in upscale shopping malls throughout the East and Northeast United States.

2. To achieve the desired "look" and marketing scheme of the Narragansett stores, unique specifications for display fixtures (including floor racks, hang bars, slat walls, brackets and shelving, and other hardware) were drawn up and sent out to bid, to several fixture distributors. The specifications and bid packages were prepared by the Debtor's President and its consulting firm, Comprehensive Development Corporation, sometime in 1988, when the Debtor's marketing future seemed secure.

3. The fixture design specifications called for a uniform finish of antique copper, with highlights of chrome, and all of the items in question had to be specially manufactured.

4. Fixture Distributing Inc. (FDI), which is a distributor (not a manufacturer) of such specialized fixtures, "won" the Narragansett order, which totaled approximately $300,000. Pursuant to the terms of the contract, the Narragansett ordered all of its required fixtures from FDI.

5. Under the relevant purchase orders, the Narragansett was required to buy fixtures for ten stores, which were to be modeled after its prototype White Flint Mall store. It is not alleged that FDI failed to produce the goods according to specifications, but the Narragansett does contend that FDI has not made reasonable efforts to liquidate the remaining fixtures and thereby mitigate damages.

6. At the time of filing of the Chapter 11 petition on February 5, 1990, the Debtor had accepted and paid for a number of fixtures, and as to those there is no dispute. Additional fixtures with a contract

value of $37,575.24 were delivered and accepted, but not paid for. The Trustee does not object to this figure, and recommends that the claim be allowed in this amount. Where the Trustee and FDI part company, is as to goods that have been neither accepted nor paid for, and which are still in a warehouse in California. The contract price of these remaining goods is $74,-678.18. The Trustee, no longer operating a going concern, has no interest in the goods, and refuses to accept delivery.

7. It is undisputed that FDI has made only minimal efforts to find alternative buyers for the remaining goods, or to otherwise dispose of them in a commercially reasonable manner, and we find that said efforts do not satisfy FDI's obligation to mitigate damages.

8. The value of these specially manufactured goods is difficult to ascertain, based upon the record before us. The Trustee's appraiser has given a quick liquidation value of approximately $25,000, and a value of $40-50,000 if marketed over a fifteen month period, while FDI's President testified that the goods have no value whatsoever. We are not impressed with the basis for either opinion.

## CONCLUSIONS OF LAW

1. A contract was formed between the Debtor and FDI for the sale of $300,000[ ] worth of specially manufactured store fixtures.

2. The Debtor has breached the terms of the contract by refusing delivery of the remaining goods identified to the contract. R.I.Gen.Laws § 6A-2-501.

■ 3. As a result of that breach, FDI has an action for the price ($74,678.18) under Rhode Island law. R.I.Gen.Laws § 6A-2-709. However, because it has not made commercially reasonable efforts to sell or dispose of the goods, nor demonstrated that such an effort would be unavailing, FDI is not entitled, pursuant to § 6A-2-709(b), to recover the full price of the goods in question.

4. The Trustee is the owner of the goods.

■ 5. The claim as filed is disallowed as filed, without prejudice, and the Trustee, as the owner, is ordered to conduct an auction sale of the goods as soon as practicable, with the cooperation and input of FDI, if it desires, to participate. The proceeds, if any, realized from said sale will be a factor, upon reconsideration of FDI's claim, after the liquidation.

Enter Judgment consistent with this opinion.